IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| SPRING VENTURES, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 16-470-GMS |
| | ) | |
| GOOGLE LLC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER CONSTRUING THE TERMS OF U.S. PATENT NO. 8,661,094[1]

After considering the submissions of the parties and hearing oral argument on the matter, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that, as used in the asserted claims of U.S. Patent No. 8,661,094 ("the '094 patent"):

1. The term **"translator input window"** in the '094 patent is construed to mean "an input window that is separate from the browser window."[2]

---

[1] All docket citations refer to Civil Action NO. 16-470-GMS. The abbreviation "Tr." refers to the transcript from the *Markman* Hearing on October 11, 2017, D.I. 91.

[2] The parties' dispute centers on: (1) whether the translator input window is separate from the browser window; and (2) whether the term "window" should be defined for the jury. *Markman* Hr'g Tr. 32:15-18. The court finds that the disputed term should be construed as "an input window that is separate from the browser window" because that construction comports with both the description of the term in the asserted patent and the plain and ordinary meaning of the term.

First, the specification and the prosecution history of the '094 Patent teach that the "translator input window" is separate from the browser window. While Figure 1 of '094 Patent explicitly shows one example of where the browser is separate from the translator, the court is guided by the following specification language:

> In accordance with one preferred embodiment of the invention, translator 32 includes a *separate input window*, which is preferably *overlaid on a portion of the browser window*. Preferably, this separate window remains on top on the browser and at a fixed relationship to at least one feature of the browser display.

'094 Patent at 9:37-42; *Lucent Technologies, Inc. v. Gateway, Inc.*, 525 F.3d 1200 (Fed. Cir. 2008). Both parties cite to the above passage of the specification for their construction of "separate." *Markman* Hr'g Tr. 32:21-22. The specification language explains that the translator input window is separate from the thing you overlay on it, namely,

2. The term **"browser window"** is construed to be the plain and ordinary meaning of the term.[3]

---

the browser window. '094 Patent at 9:37-42. The actions taken during prosecution of the '094 Patent serve as additional evidence that this language is consistent with the embodiment of the invention that appears in the claim language. In the applicant's Response to Final Office Action dated January 13, 2012, applicant amended the claim terms in original claim terms 134 and 151 (now 1 and 13) to overcome a 35 U.S.C. § 112 rejection by deleting the word "patched" and replacing it with "overlaid on the browser window." (D.I. 81-2 at A14.) In explaining the amendment, applicant cited to the language at 9:37-42 of the '094 Patent and identified the preferred embodiment to include a "separate input window" as the written description support for the claim language at issue. (D.I. 76 at 9; D.I. 81-2 at A19-20.) Therefore, the court finds that the input window is separate from the browser window.

Plaintiff argues the translator input window need not be separate because a construction of "translator input" to include "separate" ignores the fact "translator" modifies "input" and that "separate" means the inventor wants to add functionality. (D.I. 74 at 12.) Plaintiff also argues the claim says the user has to overlay the browser window, which means occupy some of the screen space and that the fact the translator input window is overlaid on a portion of the browser window suggests it is separate from any browser input fields. *Markman* Hr'g Tr. 45:6-8, 19-23. Plaintiff points out that this is only one part of the specification, which may be ambiguous, but another part of the specification indicates that "a transparent window is overlaid on the browser address entry window." '094 Patent at 9:53-54. This, however, is the part of the specification this claim identifies as the preferred embodiment. Defendant argues that this language is not ambiguous at all and that the specification clearly explains that the translator includes the separate input window and it is part of the translator. *Markman* Hr'g Tr. 33:11-16. By adding the concept of "overlaid," applicant made it clear that they were not talking about something in the browser, but rather the browser window. *See Markman* Hr'g Tr. 34:1-9. As Defendant points out, Plaintiff ignores the specification's teaching that the specification discloses a "separate input window, which is preferably overlaid on a portion of the browser window." '094 Patent at 9:38-40. The intrinsic evidence clearly shows that a viewing area that is part of the browser window is not separate from the window and is not overlaid on that window. *AIA Engineering Ltd. v. Magotteaux Intern. S/A*, 657 F.3d 1264 (Fed. Cir. 2011) (the purpose in consulting the prosecution history in claim construction is to exclude any interpretation that had been disclaimed during prosecution); *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 629 F.3d 1311 (Fed. Cir. 2010), *reh'g en banc* granted, opinion vacated, 419 Fed. Appx. 989 (Fed. Cir. 2011) and *aff'd*, 786 F.3d 899 (Fed. Cir. 2015), *reh'g en banc* granted, opinion vacated, 612 Fed. Appx. 617 (Fed. Cir. 2015) and on *reh'g en banc*, 797 F.3d 1020 (Fed. Cir. 2015) (statements made during prosecution were not enough to overcome the clear description of "the invention" found in the specification); *Honeywell Intern., Inc. v. ITT Industries, Inc.*, 452 F.3d 1312 (Fed. Cir. 2006) ("[w]here, as here, the written description clearly identifies what his invention is, an expression by a patentee during prosecution that he intends his claims to cover more than what his specification discloses is entitled to little weight.")

Second, the court finds no need to define the term "window" because the term should be given its plain and ordinary meaning. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (internal citations omitted). Nothing in the specification suggests that any special meaning should be ascribed to the phrase "window." Plaintiff cites to extrinsic evidence of an Internet webpage defining "window" to show that "window" should be defined separately. Plaintiff contends that the "browser window" is really the "entire viewing area" in the screen in which data may be input. *Markman* Hr'g Tr. 47:17-18. However, the viewing area of a screen can display multiple browser windows simultaneously. Plaintiff's construction contradicts the specification and introduces new ambiguity to the claims by differentiating between a "viewing area" and a "window." While Plaintiff is correct that the "browser" back in 1997 was blank when first opened, the introduction of the phrase "viewing area" creates a new dispute as to what the edges around the screen should be called. *Markman* Hr'g Tr. 45:18-19. Defining "window" would exclude a portion of the browser window that is not visible because it is either off the screen or underneath another window. Although windows are viewing areas, not all viewing areas are windows. (D.I. 82 at 9.) Defendant's proposed construction clarifies that a "window" is not a "browser window" unless it is displayed by the browser. Thus, there is no need for the court to define "window" separately.

[3] The parties agreed that there is no need for the court to construe "browser window" as the parties have agreed to the term being given its plain and ordinary meaning. (D.I. 92.)

2

3. The term **"overlaid on a portion of the browser window"** is construed to be the plain meaning of the term.[4]

4. The term **"translator entity"** is construed to mean "an entity that performs the functions for the 'translator entity' as set forth in the respective claims."[5]

5. The term **"URL address for a webpage which is most likely to be a desired webpage associated with the input text string information received rom the user"** is construed to mean "URL address associated with the input non-URL text

---

[4] The parties agreed that there is no need for the court to construe "overlaid on a portion of the browser window" as the parties have agreed to the term being given its plain and ordinary meaning. (D.I. 92.)

[5] The parties' constructions are nearly identical to one another except that Plaintiff's construction includes the limitation that the translator entity have software operable on a computer. The parties dispute centers on whether the "translator entity" is referring to a "software unit" residing on a computer or just an "entity." *Markman* Hr'g Tr. 55:1-4. The court adopts the Defendant's proposed construction. Accordingly, the court finds no reason to import the term "software unit" into the construction of the translator entity.

Turning to the claims at issue, Claim 1(b) recites the limitation of a "software unit," while Claim 13(b) does not. '094 Patent, Claims 1, 3. Claim 1(b) is clearly talking about a translator entity with software on it, so the claim teaches that the translator entity should not be construed to mean "software." If the court were to construe "translator entity" as software then the claim would say software twice, which seems nonsensical. Next, the court looks to Claim 13(b), which says the "translator entity" is coupled to the browser. Claim 13(b) does not mention a software unit at all. The court is not going to import the limitation of "software," which appears in one claim but not the other, into the term "translator entity" when the patent does not require such a limitation. Plaintiff's construction that the translator entity have software operable on a computer into the term "translator entity" itself improperly imports unwarranted and unnecessary confusion into the claims. *Karlin Tech. Inc. v. Surgical Dynamics Inc.*, 177 F.3d 968 (Fed. Cir. 1999) (there is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims). This would render superfluous Claim 1's express recitation that the "translator entity" must "hav[e] software operable on a computer." '094 Patent at 15:22-23.

Plaintiffs argue the claim construction should include a "software unit" residing on one or more computers and that the phrase "more computers" was equivalent to "places on a computer."*Markman* Hr'g Tr. 55: 1-4, 15-17. Plaintiff also argues that Defendant's construction ignores the difference between "residing" and "operable" and that "residing" should be defined as located in the memory while "operable" means whether the system actually works. *Markman* Hr'g Tr. 56:13-15.

While Plaintiff is correct that claims 7 and 8 depend on claim 1, Defendant argues that it is improper to import "software" onto the other claim terms. The court agrees. Claim 7 says the translator entity resides on a local server, while Claim 8 says the translator entity "resides remotely on the Internet without a remote server." Thus, "resides" does not mean software because nothing in claims 7 or 8 say the thing that resides on a computer must be software. As Defendant points out, a computer is made of both software and hardware. *Markman* Hr'g Tr. 59:21-22. While it is true that claims 7 and 8 are talking about software, it is not because the term "translator entity" intrinsically means software. Rather, it is because the rest of claim 1(b) says in this particular instance, the translator entity is software. Claim 13(b) does not provide that. Both parties agree that Claim 13(b) requires operable software. If the software were not operable, that would make for a strange reading of the claim. Both parties agreed that 13(b) has operable software, but as Defendant points out, claim 1 has an express recitation that the translator entity "must hav[e] software operable on a computer." '094 Patent at 15:22-23. Therefore, it is clear that "translator entity" does not equate to software.

3

string information, the URL address being for a webpage most likely to be desired webpage."[6]

6. The term **"statistical data of web pages in web search results for said information"** is construed to be the plain meaning of the term.[7]

7. The term **"an input of a non-URL text string/the input text string information"** is construed to mean "the text [that is not a URL-address text string] typed in by the user."[8]

---

[6] It is well known that this Judge does not entertain arguments for indefiniteness at this stage in the proceedings. Because Defendant failed to provide an alternative definition, the court adopts Plaintiff's proposed construction.

[7] The parties agreed that there is no need for the court to construe "statistical data of web pages in web search results for said information" as the parties have agreed to the term being given its plain and ordinary meaning. (D.I. 92.)

[8] Plaintiff's and Defendant's proposed constructions for this term are almost identical, differing in only one aspect. While the parties' proposed construction are facially similar, briefing and oral argument reveal two areas of divergence: (1) Plaintiff offers a construction, which includes the phrase "which has been input;" and (2) Defendant proposes a construction including "typed in by the user." The disagreement here is about whether the type of "input" is limited to "typing."

As an initial matter, the court rejects Plaintiff's proposed construction omitting the phrase "typed in by the user." The court agrees with Defendant that including the phrase "typed in by the user" is disclosed in both the specification and the rest of the intrinsic record. '094 Patent at 3:23-28. Additionally, Plaintiff contends Defendant's construction equating the word "input" with a particular kind of input—"typed by the user"—improperly limits the claim. (D.I. 74 at 14.) Both parties acknowledge that the '094 patent describes "typing" as one kind of input method. Plaintiff, however, contends that the specification contains no statement that limits input to typing. Both parties further agree that the specification discloses the user inputs information in the "same way in which a standard URL would be entered." '094 Patent at 5:50-53; (D.I. 74 at 14.) The specification further discloses that URLs are normally typed. '094 Patent at 3:28. The intrinsic record is all about typing and nothing in the patent or prosecution history states otherwise.

The court adopts Defendant's proposed construction because the patent provides more support for it than "which has been input." *See* '094 Patent 3:28, 9:58-61 (". . . if the user had in fact typed the URL.").

The court also rejects Plaintiff's proposed construction because of the phrase "which has been input." During the *Markman* Hearing, Plaintiff cited to a parent application, Patent No. 7,596,609, which was not mentioned in the briefs and is not cited in the list of intrinsic evidence. *Markman* Hr'g Tr. 67:7-14, 72:18-25. Plaintiff argued that the parent to the '094 patent is "technically intrinsic evidence." *Markman* Hr'g Tr. 67:11-14. In that reference, the patent Examiner accepted "typing" was removed to encompass "other methods of entering information, such as voice recognition." *Markman* Hr'g Tr. 67:19-21. While this would be instructive to the court, the Parent Application presented by Plaintiff was not argued in the briefs and was a surprise to both the court and Defendants. *See Trustees of Columbia University in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1369-71 (Fed. Cir. 2016) (Although commonly owned, the two families of patents did not relate to the same disclosure, were filed years apart, and had only one inventor in common. 811 F.3d at 1369. The district court therefore erred in assuming that a term in one set of patents should be construed the same as different language in another set of patents). Thus, while Plaintiff argues the parent application containing the statements by the applicant in the related prosecution history is "technically" intrinsic evidence, the court declines to give weight to that "intrinsic" evidence. Here, the parent application was issued five years prior to the patent at issue. *See Stryker Corp., v. Zimmer, Inc.*, 837 F.3d 1268 (Fed. Cir. 2016) (explaining that parent applications and narrower claims).

8. The term **"without any additional user intervention beyond the entry of said input text string information"** is construed to mean "without requiring the user to take an *additional* intervening action beyond what would have been required to enter the text string which has been input *by the user*."[9]

9. The term **"domain name server"** will not be construed by the court at this time."[10]

Dated: October 23, 2017

UNITED STATES DISTRICT JUDGE

---

[9] The dispute in Plaintiff's and Defendant's proposed construction centers around the words "input," "entry," and "additional." The clause "without any additional user intervention, beyond said entering" appears four times in the specification of the '094 Patent. (D.I. 74 at 17.) Plaintiff asserts that Defendant's proposed construction engrafts limitations from a preferred embodiment disclosed in the '094 specification onto the claim term "intervention." (D.I. 74 at 18.) The court agrees. The patent discloses a preferred embodiment that allows a user to directly access WWW pages "without requiring the user to make selections and/or perform any additional procedure beyond what would have been required if the user had in fact typed the URL." (D.I. 74 at 18.) Plaintiff asserts that Defendant cannot point to any clear and unambiguous disclaimer of the broader ordinary scope of the term "intervention." (*Id.*); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2001) (a construction may depart from ordinary and customary meaning only if there is a clear and unambiguous disavowal of claim scope). Accordingly, the court will adopt the Plaintiff's proposed construction and add in the agreed upon phrases by the parties. *Markman* Hr'g Tr. 87:7-22.

Defendant's main argument is that Plaintiff's construction is open ended and that Defendant's construction is taken from the specification itself. '094 Patent at 3:23-28. Defendants, however, fail to address the "entry" element as required by the claim. Thus, the court sees no reason to import the limitation "additional" into the patentees' explicit definition in the specification. Nevertheless, during the *Markman* Hearing, Plaintiff indicated it is okay with having the words "additional" and "by the user" added into their proposed construction. *Markman* Hr'g Tr. 87:7-22. Therefore, the court adopts Plaintiff's construction with the agreed upon additions of the parties.

[10] Given the Parties' representations at the *Markman* Hearing that they will try to agree on the construction of this term, the court will not construe the term at this time. *Markman* Hr'g Tr. 95:11-15. The Parties are directed to notify the court as to whether they can agree to a construction by the close of business on Friday, October 27, 2017.

5